William A. LOWE, Plaintiff–Appellant,

v.

CITY OF EAST CHICAGO, INDIANA; Robert Pastrick, Mayor of East Chicago, Indiana; Officer C. Morris; Officer T. Davis; Lt. E. Hagler; Officer J. Nava; Officer L. Kurmis; Former Deputy Chief H. Sanders; Sgt. G. Diaz; Officer P. Jurasevich; Sgt. R. Edmond; Sgt. R. Jackson, Defendants–Appellees.

No. 89–1857.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1990.

Decided March 9, 1990.

William A. Lowe, East Chicago, Ind., Carlton Lowe, University Park, Ill., for plaintiff-appellant.

Estelle Powell, East Chicago, Ind., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

This is an appeal from the dismissal of plaintiff's case with prejudice pursuant to Fed.R.Civ.P. 41(b) and the denial of plaintiff's motion for a trial continuance. We reverse and remand.

## I. BACKGROUND.

William Lowe is a thirty-eight year old resident of East Chicago, Indiana who works as a substitute teacher there. He filed suit on March 16, 1988 alleging violations of 42 U.S.C. §§ 1981, 1983, 1985(2) & (3), and 1988 by the City of East Chicago, its mayor and ten police officers. These alleged violations are based on a whole series of alleged acts, centering on the arrest, sexual assault and beating of Mr. Lowe on March 10, 1987 and the police entry of his home on August 3, 1987. However, the crucial events for purposes of this appeal are those which led to the dismissal of the case with prejudice.

Mr. Lowe hired Scott L. King to be his attorney and paid him a $4000 retainer fee. On February 4, 1989, Mr. Lowe and his family met with King who told them that the case had not been set for trial and probably would not be until August 1989. The family apparently did not trust King, because on February 6 they checked the court files themselves and found that on September 13, 1988 the case had been assigned a trial date of March 20, 1989. Mr. Lowe also says that he found that King had done little in the way of preparing for the case. As a result, Lowe asked King to withdraw from the case and file a motion for a continuance. King did not file the motion until February 28.

Between February 4 and February 28, Lowe contacted three attorneys about representing him. Lowe states that none of the attorneys would represent him until King had withdrawn and a continuance had been granted. On February 24, Mr. King and an attorney for the City of East Chicago met for a pretrial conference with Judge Lozano, during which Mr. King apparently told the judge of his intention to withdraw as Lowe's counsel. King thereafter advised Lowe to settle the case, which Lowe declined to do. Lowe says that he was not allowed to speak personally to Judge Lozano, nor could he attend the conference. Judge Lozano took Mr. King's motion to withdraw under advisement.

On March 20, he granted King's motion to withdraw, but insisted that Lowe's case would not be continued, that it would be tried starting the next day with King or another attorney, or with Lowe proceeding pro se. Judge Lozano also gave Lowe the option of voluntarily dismissing his case.

[*] The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

Lowe's request to dismiss *without* prejudice was denied. The City attorney argued that she would be prejudiced by a continuance of the case, since she had "blocked off" that week for a trial. Based on the City's assertion of prejudice and the court's recognition of its busy docket, the court declined to grant a continuance. Faced with the option of proceeding unprepared, Mr. Lowe said: "I need representation, Your Honor. If dismissing is what it must be done, Your Honor, yes, I understand." Tr. at 124. In addition to dismissing Lowe's case with prejudice, Judge Lozano assessed costs against him.

## II. ANALYSIS.

### 1. Whether Mr. Lowe's dismissal was voluntary.

■ Lowe argues that his agreement to dismiss the case should not be treated as a voluntary dismissal. It is difficult to classify Mr. Lowe's agreement to a dismissal with prejudice as voluntary, considering the choice he was given. He was not ready to go to trial the next day, since his former attorney had not subpoenaed witnesses.[1] The difficulty in getting witnesses to court was made even greater by the fact that Lowe's primary witnesses were in jail.

In addition, according to Mr. Lowe, discovery had not been conducted with regard to one count of his complaint. Lowe states that, as of March 21, "[f]ormer counsel had not interviewed, deposed nor subpoena [sic] any witness of appellant...." Brief of Appellant at 23. The City attorney told a different story to Judge Lozano—that plaintiff's attorney *had* taken five depositions, tr. at 105—but even if discovery had been completed, trial witnesses were not available to Lowe on one day's notice.

It is difficult, therefore, to conclude that Mr. Lowe had much of a choice. The only way to interpret the dismissal as voluntary is to rely on the fact that Mr. Lowe chose his attorney, Mr. King, in the first place. This seems to be the reasoning applied by Judge Lozano when he said, "that [the problem between Mr. Lowe and Mr. King] is between you and the man that you chose voluntarily of your own right and your own choosing." Tr. at 70.

### 2. Whether the district court abused its discretion by dismissing Mr. Lowe's case with prejudice.

■ We review Judge Lozano's dismissal of Lowe's suit by an abuse of discretion test. *Roland v. Salem Contract Carriers, Inc.,* 811 F.2d 1175, 1177 (7th Cir.1987). We consider the history of the case and not just its status when dismissed. *Id.* The district court should consider less severe sanctions than dismissal for a party's noncompliance with court orders or failure to prosecute his or her claim expeditiously, unless "there exists a clear record of delay or contumacious conduct or when less drastic sanctions have proven ineffective." *Id.* (citing *Schilling v. Walworth County Park & Planning Comm'n,* 805 F.2d 272, 275 (7th Cir.1986), *Webber v. Eye Corp.,* 721 F.2d 1067, 1069 (7th Cir.1983), *Locascio v. Teletype Corp.,* 694 F.2d 497, 499 (7th Cir.1982), *cert. denied,* 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 808 (1983)).

We are reluctant to affirm a dismissal when there is no sign of either client neglect of court processes or knowledge of the attorney's neglect. *Beeson v. Smith,* 893 F.2d 930, 932 (7th Cir.1990); *Herring v. City of Whitehall,* 804 F.2d 464, 467 (8th Cir.1986) (reversing a district court's dismissal because there was no sign of client fault).

■ There is no history of "contumacious conduct" in this case, since there is only one instance of noncompliance with a discovery order of the court which was quickly corrected by King and which may

---

1. This is hardly surprising, since Mr. King was not planning to try the case, even if he had not been dismissed. The fact that he was scheduled to be on trial before another judge was brought to Judge Lozano's attention in the Verified Motion for a Continuance filed by King. King stated there:

4. If said Petition is not granted, counsel is scheduled to try the case of Woodard v. Hatcher, et. al., cause number 85 PSC 1731 on March 20, 1989, which trial was scheduled by that Court in June, 1987.
Appendix at 4, ¶ 4.

not have even delayed the case. This is a young case, which was filed only a few days over a year before the day it was dismissed. That Lowe was unable to retain an attorney until King's motion to withdraw had been granted is not unreasonable, since an attorney would want at least to see Lowe's files before accepting the case. In addition, most attorneys would hesitate to take a case scheduled to begin trial within a month without a continuance.

Even without these difficulties, Lowe only had from February 4, when he found out about his attorney's lack of preparation, until March 20 both to hire a new attorney and have that attorney ready to try the case. Finally, much of the fault for Lowe's not proceeding to trial on the scheduled date rests with Mr. King, who had not prepared the case and had apparently known for quite a while that he could not go to trial on the scheduled date because of a conflict with another case.

We have found abuses of discretion on similar facts. *Beeson*, 893 F.2d at 931–32; *Webber*, 721 F.2d at 1070–71 (7th Cir.1983). The policy favoring hearing cases on their merits outweighed the district court's understandable concern with clearing its docket in *Webber*, as it does here.

This case is unlike *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224 (7th Cir.1983), in which we affirmed a dismissal of an action for failure to prosecute based on plaintiffs' failure to find an attorney. There, the plaintiff had been given several continuances and had repeatedly been exhorted to find an attorney.

Having concluded that it was unreasonable to put Mr. Lowe to a choice between dismissal and going to trial when even his previous attorney was not ready for trial, Judge Lozano's denial of Lowe's motion for a continuance was also an abuse of discretion for the same reasons. This case is unlike *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081 (7th Cir.1982), cited by the City, a case which was three years old at the time of the request for a continuance, in which the plaintiffs did not object to trying their case pro se, and in

which the denial of a continuance did not prejudice the plaintiffs.

There is no way to view the circumstances here which would reasonably support the denial of a continuance and the dismissal of Mr. Lowe's case. *Id.* at 1089; *Locascio*, 694 F.2d at 499.

### III. CONCLUSION.

The district court abused its discretion in dismissing Mr. Lowe's suit and denying his motion for a continuance. Consequently, we reverse, reinstate Mr. Lowe's action and remand. Circuit Rule 36 shall apply.